### CONE v. HOPE-FULTON-EMMETT ROAD IMPROVEMENT DISTRICT.

#### Opinion delivered December 7, 1925.

1. STATUTE—TIME OF TAKING EFFECT.—Acts 1925, No. 147, amending § 25 of the Harrelson Law of October 10, 1923, contains no emergency clause, and went into effect on June 10, 1925, 90 days after the Legislature adjourned.

2. HIGHWAYS—ALLOTMENT OF FUNDS.—Though the Harrelson Law, § 23, requires an estimate to be made on or before September 1st of the amount of the fund available to road districts and the county highway improvement fund, § 21 thereof, as amended by Acts 1925, No. 147, governs the allotment of funds to be made in July, 1925.

3. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACTS. —Acts 1925, No. 147, amending the Harrelson Law as to the allotment of State funds to the counties, as applied to the allotment of funds for which estimates had already been made, did not impair the obligation of road districts bonds, in violation of Const., art. 2, § 17, since the bondholders have no contract with the State and Federal Governments where revenue of such governments must be applied to payment of the bonds.

4. TAXATION—CONTROL OVER REVENUE.—The sovereign has complete control over its revenue derived from taxation.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*H. W. Applegate,* Attorney General, and *J. S. Abercrombie,* Assistant, for appellant.

*U. A. Gentry, O. A. Graves* and *R. W. Robins,* for appellee.

WOOD, J. The General Assembly of 1925 passed an act, No. 147, approved March 7, 1925, amending § 21 of act No. 5 of the acts of the extraordinary session of 1923, approved October 10, 1923, commonly known as

the Harrelson law.   By the amendment § 21 is made to read as follows: "The State Highway Commission shall, as soon as possible, ascertain the amount and dates of maturities of the principal of the valid, unmatured bonds outstanding on January 1, 1924, that have been issued by each road improvement district in the State at the time of the passage of this act for the purpose of improving the said public roads in the State, and which mature January 1, 1924; and thereafter in each year, beginning with the year 1924, as soon as sufficient funds are available for the purpose, shall allot the sum of $3,000,000 or so much thereof as is available in the treasury by July 1st, to the respective counties of the State on the same basis that the population of each county bears to the population of the State of Arkansas as shown by the last official United States census.   Each county's portion thus set aside shall be paid by the treasurer of the State in the manner and for the purposes specified for each county."

Then follows the classification of certain counties, naming them, and designating the proportion in which the State highway fund allotted to them shall be used in the payment respectively of bonds and interest coupons, and the proportion of said amount to be paid into the county highway improvement fund.   Following this classification and apportionment of the funds allotted to the respective counties, the act provides methods for the distribution and use of the funds apportioned.

Section 2 of the act is as follows: "All unallotted funds now on hand shall be distributed and paid out in the proportions, and for the purposes as above set forth, and the State Highway Commission, the county courts of the various counties and the commissioners of all said road improvement districts shall make all necessary and proper orders to carry into effect the objects and purposes of this act."

Section 3 of the act is as follows: "All laws and parts of laws in conflict herewith be, and the same are hereby

repealed, and this act shall take effect and be in force from and after its passage.''

This action was brought by the appellee against the appellant, the Auditor, State Treasurer and State Highway Commission. In its complaint the appellee set up that it is a road improvement district organized under act 153 of the Acts of 1919, approved March 1, 1919; that under the provisions of § 21 of the Harrelson law, as amended by act 147 of the Acts of 1925, *supra*, it is the duty of the State Highway Commission to allot on July 1, 1925, the sum of $3,000,000, or so much of that sum as is available in the State Treasury by that date, to the respective counties of the State on the same basis that the population of each county bears to the population of the State, as shown by the last official United States census, and that the amount set aside to Hempstead County should be paid by the Treasurer of the State as follows: 50 per cent. to the county highway improvement fund; 50 per cent. for the payment on bonds and interest coupons as provided under act 147, *supra*, making the amount to which Hempstead County is entitled, when so allotted, the sum of $54,105, and that of this amount, when properly apportioned under the law, the appellee is entitled to $9,857.12. The appellee alleged that, unless the appellant's officers, above designated, were restrained, they would pay to the appellee district only one-half the amount to which it was entitled, and there would be paid to the county highway fund an amount greatly in excess of the amount to which it was entitled under the law. The appellee prayed that the appellants be restrained from paying the funds due it into the county highway improvement fund of Hempstead County, and that they be required to certify the amount, and issue warrants, and pay to the appellee the amount due it as provided by law.

Certain road improvement districts of Faulkner County intervened, and also set up act 147, *supra*, and asked that they be allotted the amounts apportioned to

them on July 1, 1925, under § 21 of act No. 5, as amended by act 147, *supra,* as prayed in the complaint of the Hope-Fulton-Emmett Road Improvement District. The appellants demurred to the complaint on the ground that it did not state a cause of action. The court overruled the demurrer, and the appellants elected to stand thereon. Whereupon the court entered a decree granting the relief prayed for in the appellee's complaint, and the interventions. From that decree is this appeal.

1. It will be observed that act 147, *supra,* has no emergency clause. It therefore went into effect ninety days after the adjournment of the Legislature, which was June 10, 1925. Notwithstanding the act went into effect on that day, the Attorney General contends that, when the provisions of the amendatory act are considered in connection with the provisions of act No. 5, approved October 10, 1923, it was not the intention of the Legislature to affect the distribution of the funds, which should be made in July, 1925, but that the first distribution to be made of the funds under act 147 could only take place in July, 1926. The Attorney General argues that this is true for the reason that § 23 of the Harrelson law provides the manner and time in which the amount available shall be determined, and that under § 23 of that act the distribution to be made in July, 1925, was determined on or before September 1, 1924, prior to the passage of the amendatory act. In other words, the contention of the Attorney General is that the "estimate" which the highway commission is required to make under § 23 of the Harrelson law on or before September 1st of each year of the amount of the fund that will certainly be available to the respective road districts and the county highway improvement fund before July 1st of the succeeding year is tantamount to an "allotment" of such funds, and that therefore, when the amendatory act took effect on June 10, 1925, the allotment for that year had already been made by the highway commission on September 1, 1924, and that under § 2 of the amendatory act it was intended that the distribution to be made under the

amendatory act only applied to the next allotment or certification, which was to take place after the passage of such amendatory act and which estimates or allotment could not be had until September, 1925.

We cannot concur in this construction of the act by the Attorney General, for such construction would do violence to the express language of the amendatory act. It will be observed that § 21 of the Harrelson law and act 147 amending § 21, both provide in effect that beginning with the year 1924 the State Highway Commission shall allot the sum of $3,000,000, or so much thereof, as is available in the treasury by July 1st, to the respective counties of the State on the same basis that the population of each county bears to the population of the State as shown by the last official United States census. Each county's proportion thus set aside shall be paid by the Treasurer of State in the manner and for the purposes specified for each county.   The amendatory act then changes § 21 of the original act by changing the classification of counties and the proportion of the fund to be used in the payment of outstanding bonds and the amount to be paid into the county highway improvement fund respectively of the counties as classified.   Under the original, as well as the amendatory, act, the allotment is made on or before July 1st, and the Treasurer must pay each county its portion in the manner and for the purposes specified for each county according to the law in effect at the time the allotment and apportionment is made.   Now, the amendatory act went into effect June 10, 1925, and the allotment was made to the counties as classified on July 1, 1925.   Section 2 of the amendatory act requires, it will be seen, that all *unallotted funds now on hand shall be distributed and paid out in the proportions and for the purposes as above set forth,* and requires the State Highway Commission, the county courts and the commissioners of all road improvement districts to make all necessary and proper orders to carry into effect the objects and purposes of the act.

Section 2 of the amendatory act is in perfect harmony with the first section of that act, and is not at all inconsistent with the original act. The amendatory act went into effect June 10, 1925. At the time of its passage funds were on hand and unallotted. They were allotted on July 1, 1925, thereafter, and as soon as they were thus allotted they had to be distributed, and paid out in the proportions and for the purposes as set forth in the first section of the amendatory act, which, as we have already observed, only amended the original act by changing the classification, and the proportion of the highway fund to be used in the payment of outstanding bonds, and the proportion of the amount of such fund to be paid into the county highway fund of the respective counties as classified. The Legislature is conclusively presumed to have known that the enactment without the emergency clause would take effect before July 1, 1925. So, the manifest purpose of the Legislature as indicated by the language of § 2 was to make sure that the classification, and the change in the proportion of the amount of funds to be allotted to the respective counties should apply to the allotment to be made July 1, 1925, as well as to all succeeding allotments after that date. The word "estimate," as used in § 23 of the Harrelson law, is not synonymous with the word "allotment" as used in § 2 of the amendatory act, nor are these words convertible terms. The "estimate" of the amount available to the counties is made on or before September 1st in each year, but the "allotment" of the actual amounts to the respective counties is made on or before July 1st of the succeeding year. To construe them as contended by the Attorney General, it occurs to us, would be a confusion of these terms, and would be contrary to their plain and ordinary meaning.

2. The Attorney General contends that, if the act be construed as above indicated, it would violate article 2, § 17, of the Constitution which prohibits the Legislature from enacting laws impairing the obligations of con-

tracts. There is no merit in this contention. There is no contract between the bond holders of road improvement districts and the State and Federal governments under the Harrelson law by which the revenue of these governments must be applied to the payment of bonds. The bonds are secured by levies or improvement taxes levied on the assessment of benefits on the lands according to the statutes under which the districts are created. If the State and Federal governments, in aid of the taxpayers of improvement district taxes and the bond holders of the district, set apart a portion of their revenues to be applied on the payment of bonds, such act on the part of the sovereign is a gratuity, rather than a contract. The sovereign has complete control over its revenue derived from taxation. As is said in *Sanderson* v. *Texarkana,* 103 Ark. 529, 533, "Unless inhibited by some constitutional provision, the State Legislature has full power over all matters of taxation and the collection and disbursements of taxes, and may exercise absolute control over all revenues collected by subordinate branches of the State government." See also Wade on Retroactive Law, § 22.

It follows that the decree of the trial court overruling the demurrer to the complaints and interventions and granting the relief prayed therein is in all things correct, and the same is therefore affirmed.