## GRAY v. JONES.

### Opinion delivered July 4, 1927.

1. BRIDGES—LIEN OF HOLDERS OF BONDS OF DISTRICT.—Holders of bonds issued by a bridge district, issued pursuant to legislative authority, have a valid lien against the real estate situated within the improvement district to secure the payment of such bonds at maturity.

2. BRIDGES—ALLOTMENT OF HIGHWAY FUNDS.—The State Highway Commission cannot be required to allot out of State highway funds a sum sufficient to pay the maturing bonds and accrued interest of a bridge improvement district created by Acts of 1925, p. 977; Acts 1927, p. 17, § 6, providing for allotment of funds to road improvement districts, imposing no obligation with reference to bridge improvement districts.

3. BRIDGES—VALIDITY OF STATUTE ALLOTTING HIGHWAY FUNDS.—Acts 1927, p. 17, relative to allotment by the State Highway Commission of highway funds to aid road improvement districts, *held* not to violate Amendment 14 of the Constitution of the United States, by denying equal protection of law, in failing to extend relief to bridge improvement districts under the same provision as for road districts, since the contribution to road improvement districts is a gratuity, which the State may give or withhold at will.

Appeal from Independence Circuit Court; *S. M. Bone,* Judge; affirmed.

*T. A. Gray* and *McCaleb & McCaleb,* for appellant.

SMITH, J. At the 1925 session of the General Assembly, act No. 338 (Acts 1925, page 977) was passed, creating Independence County Bridge District No. 1, and providing for the construction of a bridge across White River on the State highway system at or near the city of Batesville, in Independence County, Arkansas, and for other purposes.

The preamble of the act reads as follows:

"Whereas, three main lines of the State system, one passing through the middle of the State from the northeast to the southwest, one passing east and west through the State, and one running in a northwesterly and southeasterly direction across the State through the city of Batesville, in Independence County, Arkansas; and whereas, all of said main lines of road cross White

River at a point near the said city of Batesville, making it a public necessity for a bridge to be built across said river at said point for the benefit of public travel in the State of Arkansas."

Section 1 of this act defined the boundaries of the district, and provided for the making of by-laws and for the election of the necessary officers and employees. Section 2 provides that "said district shall have power to construct and maintain a bridge, with necessary approaches and embankments leading thereto, be used as a public highway across White River, in Independence County, Arkansas, at the present location of Ramsey's Ferry, practically adjacent to the city of Batesville, Arkansas, or as near to said ferry as the Federal authorities shall authorize and designate."

To hasten the completion of the improvement the commissioners were authorized to borrow a sum of money, not exceeding one-half of the cost of the improvement, and to issue bonds therefor, and, pursuant to this authority, bonds were issued in the sum of $187,000 by the improvement district. A portion of these bonds matured in the year 1927, and interest on all the bonds was payable in that year, and the holders of these bonds have a valid lien against the real estate situated within the improvement district to secure the payment thereof.

The purpose of this suit is to determine whether the State Highway Commission can be required to allot out of the State highway funds a sum sufficient to pay the maturing bonds and accrued interest of the said bridge improvement district in the year 1927. The relief prayed was denied, and the property owners have appealed.

The property owners who pray this relief say they are entitled thereto under the provisions of act No. 11, passed at the 1927 session of the General Assembly (Acts 1927, page 17). It is recited in § 1 of this act that it is declared "to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State comprising the State highways as defined herein."

Section 2 of the act repeals certain sections of the highway act commonly referred to as the Harrelson Law.

By § 3 of the act it is provided that "the commission shall, as soon as possible, ascertain the amount of the outstanding valid bonds issued by road improvement districts in this State, the dates of the maturities thereof, and the annual interest due thereon, and it shall be the duty of the circuit clerk of each county to furnish the commission with such information. The commission shall each year, beginning with the year 1927, allot to each road district in the State now having outstanding bond issues an amount equal to its bonds maturing during the year plus a paying charge of one-eighth of one per cent. of bonds to be paid, and one-fourth of one per cent. of interest to be paid, and shall certify to the State Auditor the amount alloted to each road district."

This section also provides that, in case the annual appropriation of $6,500,000 allotted to the road improvement districts by the act is insufficient to pay in full the maturing bonds and interest for the given year, the commission shall allot to each district its *pro rata* of such appropriation, and that, on or before the first day of September in each year, the commission shall certify to each road district the amount apportioned to it for the fiscal year, and that the commissioners for each district shall reduce the road taxes against each tract of land in the district *pro rata* in an aggregate amount equal to the contribution made from the State highway fund.

By § 4 of the act it is made the duty of the highway commission to construct the roads in the State highway system which are not now constructed, and that the work of construction shall be pushed as rapidly as funds are available for that purpose.

After thus specifically providing for the relief of the road improvement districts of the State, § 6 of the act provides that "The commission may let contracts for the construction of necessary bridges on the State highways, to be paid for out of the State highway fund. It may make contributions to other bridges which it deems

necessary on the State highway that may be constructed by bridge districts.''

Notwithstanding the provisions of the act quoted and referred to, the property owners in the bridge district insist that the act should be so construed as to require the Highway Commission to allot highway funds to the payment of the bonded indebtedness of bridge improvement districts, as well as those of road improvement districts. The argument is made that the bridge is an essential part of the State's highways and is itself a highway, and that the act declared the policy of the State to take over, construct, maintain and control all the public roads comprising the States highways, and that no reason exists for relieving the property owners in road improvement districts that is not equally applicable to bridge improvement districts, and that to relieve one and deny relief to the other is to deny the equal protection of the law to the property owners in bridge improvement districts.

In reply to this argument it may be said that, by special acts passed at various sessions of the General Assembly, a large number of road improvement districts have been created, and a number of bridge improvement districts, the purpose of the first being to improve roads and that of the latter to build bridges.

Many of the acts creating road improvement districts contained authority for the districts to construct bridges, subways, culverts, and all other necessary appurtenances to said roads, but this authority was construed by this court to mean such bridges, etc., as were merely incidental to the road or necessary appurtenances thereto, and not bridges of such size and magnitude as would constitute separate improvements.

In the case of *Van Dyke* v. *Mack,* 139 Ark. 524, 214 S. W. 23, a road improvement district undertook to construct a bridge across White River in Jackson County, and we held that, however essential the bridge might be to the utility of the road, it could not be constructed as a part thereof, because its magnitude constituted it a separate

improvement.· See also *McAdams* v. *Henley*, 169 Ark. 97, 114, 273 S. W. 355, 41 A. L. R. 629; *Mack* v. *Paragould and Hopkins Bridge & Road Imp. Dist.*, 168 Ark. 867, 271 S. W. 958; *Wimberly* v. *Road Imp. Dist. No. 7*, 161 Ark. 79, 84, 255 S. W. 556; *Bulloch* v. *Dermott-Collins Road Imp. Dist.*, 155 Ark. 176, 244 S. W. 327.

It has therefore been customary, when a bridge was desired and was essential to supply what would otherwise be a missing link in a highway, which was of such magnitude that its cost would be very considerable, to make it the subject of a separate improvement. It was not held that a district could not be organized to construct both a road and a bridge, but it has been held that an improvement district organized to improve roads could not build bridges of such size and magnitude as to constitute separate improvements. See cases *supra*.

In passing act No. 11 at the 1927 session of the General Assembly it must, of course, be assumed that the General Assembly was aware of the fact that both road improvement districts and bridge improvement districts had been created, and of the differences between them, and therefore to have intended only to relieve road improvement districts, when they were specifically referred to as such in § 3 of the act and no mention was there made of bridge improvement districts.

As we have pointed out, § 3 of the act provides that "the commission shall, as soon as possible, ascertain the amount of the outstanding valid bonds issued by road improvement districts in this State," and these are the obligations which the Highway Commission is directed to pay in a sum not exceeding $6,500,000 per annum. No reference is there made to the obligations of bridge improvement districts. That these districts were not intended to be included in § 3 is shown by the concluding paragraph of § 6 quoted above.

In the one case a positive mandate is given to relieve road improvement districts to the extent of $6,500,000 per annum, if necessary, and in the other a mere discretion

was imposed, but a clear distinction between districts of the two kinds was made.

It is argued that no valid reason exists why relief should be extended to road improvement districts and denied to bridge districts, and that to so construe the act renders it obnoxious to the Fourteenth Amendment to the Constitution of the United States, in that it denies certain citizens the equal protection of the law.

We need not consider why the Legislature should grant relief in one case and withhold it in the other. We need only determine that it has been done, and this fact clearly appears. The right to make such a distinction was clearly recognized in the case of *Cone* v. *Hope-Fulton-Emmett Road Imp. Dist.*, 169 Ark. 1032, 277 S. W. 544. That case involved the construction of act 147 of the Acts of 1925 (Acts 1925, page 433), amending the Harrelson Road Law as to the allotment of State highway funds to the various counties of the State, and it was insisted that, if the act were given a certain construction, it would render it unconstitutional as impairing the obligations of a contract, in that the State would not make the contributions which would otherwise be made under former legislation. We disposed of this contention by saying:

"The Attorney General contends that, if the act be construed as above indicated, it would violate article 2, § 17, of the Constitution, which prohibits the Legislature from enacting laws impairing the obligations of contracts. There is no merit in this contention. There is no contract between the bondholders of road improvement districts and the State and Federal Governments under the Harrelson law by which the revenue of these governments must be applied to the payment of bonds. The bonds are secured by levies or improvement taxes levied on the assessment of benefits on the lands, according to the statutes under which the districts are created. If the State and Federal Governments, in aid of the taxpayers of improvement district taxes and the bondholders of the district, set apart a portion of their revenues to be applied on the payment of bonds, such act on the part of

the sovereign is a gratuity rather than a contract. The sovereign has complete control over its revenue derived from taxation.''

So here the contribution which is made to the road improvement districts of the State is a gratuity which the State has the right to make, and it may, for any reason satisfactory to its General Assembly, through which it acts, give or withhold this gratuity.

We conclude therefore that the court below was correct in holding that act No. 11 did not require the highway commission to make an allotment of the highway funds in payment of the bonded indebtedness of the bridge districts of the State, and the judgment so holding is therefore affirmed.