WILLIFORD *v.* BOARD OF SUPERVISORS OF PERRY COUNTY, MISSISSIPPI

No. 42299 February 26, 1962 138 So. 2d 299

*Earle L. Wingo,* Hattiesburg, for appellant.

*John Dunnam, Jr.,* New Augusta; *Watkins, Pyle, Edwards & Ludlam, Watkins & Eager,* Jackson, for appellee.

308

RODGERS, J.

This is a bond validation case. It came to this Court from the Chancery Court of Perry County. The Chancellor entered an order on the 7th day of November 1961, validating the bonds of Perry County in the sum of $200,000 for the purpose of building roads, over the objection of H. H. Williford, a taxpayer. The objector has appealed.

On May 1, 1961, the Board of Supervisors of Perry County, Mississippi, unanimously adopted a resolution declaring the intention of the Board to issue bonds of Perry County in the maximum principal amount of $200,000 to raise money for the purpose of constructing state-aid roads in the county. The resolution provided that the bonds mature annually over a period not to exceed twenty years from the date of issue, and that the amount needed to retire such bonds, principal and interest, in annual installments should not exceed sixty-five percentum of the funds allocated to Perry County during the preceding year.

The foregoing resolution determined that the allocation to Perry County of state-aid construction funds from gasoline sales tax during the preceding fiscal year was $90,906.22, and that sixty-five percent thereof would amount to $59,098.04, and that the amount to retire the proposed bonds, principal and interest, in annual installments over a period of twenty years from the date of issuance was estimated to be $15,000 per annum, and that such sum did not exceed sixty-five percentum of the funds allocated to Perry County during the preceding year.

Notice of their intention to issue the foregoing bonds was given by the Board of Supervisors in accordance

with Chap. 196, Laws 1960. There was no petition filed requesting the Board to hold an election by the qualified voters of Perry County, and the Board proceeded to enter an order directing the issuance of the bonds, and that notice be given to prospective bond buyers, and asking that sealed bids be received. On the date given in the notice, the bids were duly opened and it was determined that Scharff & Jones, Inc. and Associates were the best bidders and accordingly their bid was accepted. The opinion of the State's Bond Attorney, a certificate of ''non-litigation'', and a certified copy of all of the proceedings before the Board were filed with the Clerk of the Chancery Court. Notice was then given to the Chancellor who fixed a date for a hearing on the bond validation proceedings, and directed that notice be given to the taxpayers. No objection had been made to any of the proceedings up to this point, but at this time, Mr. H. H. Williford, a taxpayer of the county, appeared and filed a written objection of the validation of the proposed road construction bonds. The chancellor heard the objection and entered the above-mentioned decree validating the bonds, from which decree appeal was made to this Court.

The appellant-taxpayer assigns only one ground in his assignment of errors, on which he seeks to reverse this case, namely: ''The Chancellor committed * * * error in his decree * * * validating the State-Aid Road Bonds of Perry County, dated August 1, 1961.'' The appellant argues, however, that (1) the Board of Supervisors of Perry County, Mississippi, went beyond the jurisdiction and authority conferred upon them by the Laws of 1960, Chap. 196; (2) and it is said that the Board of Supervisors modified the final terms of the sale of the bonds from the terms stated in the first notice because the Board gave notice that the bonds would be sold and retired from the total net gallonage of gasoline taxes allocated to the county. In the notice of approval

of the acceptance of the bid, the resolution of approval for the sale of the bonds provided that said funds would be "irrevocably pledged" for the payment of the bonds as long as they remain outstanding. It was argued that this was erroneous because the Board had no authority to "irrevocably pledge" the funds granted to the county by the State for the purpose of building roads and the order attempting to do so was utterly void.

The final resolution here complained of contains the following paragraph: "Section 1. That bonds of the County of Perry, State of Mississippi, payable, both principal and interest, by the State Treasurer of the State of Mississippi primarily from the funds allocated to such county under the provisions of Section 10127, Mississippi Code, Annotated, as now or hereafter amended, which funds or their equivalent are irrevocably pledged for the payment of these bonds so long as any remain outstanding * * *"

The language in the final resolution above-quoted was evidently used to satisfy the conditions set out in the written bid filed by Scharff and Jones, Inc., where it was stated: "This bid proposal is subject to the following conditions: * * * (2) A bond attorney of national reputation acceptable to us shall give a final unqualified approving opinion on such bonds, stating that for the payment of such bonds the funds allocated to this County, pursuant to the provisions of Section 10127 Mississippi Code Annotated, *or their equivalent are irrevocably pledged by the State of Mississippi * * *"* (Emphasis supplied)

The form of the bond proposed to be issued by Perry County is made a part of the final resolution, and in the bond itself, the Board of Supervisors agrees and contracts as follows: "This bond is issued by the County of——————————, pursuant to the provisions of Chapter 196, Laws of Mississippi, 1960, and is not a general obligation of said County. Both principal and

interest are payable by the State Treasurer of the State of Mississippi primarily from funds allocated to such county under the provisions of Section 10127 Mississippi Code Annotated, as now or hereafter amended, which funds or their equivalent are irrevocably pledged for the payment of this bond and interest thereon so long as this bond or any of the bonds of the series of which it is a part shall remain outstanding.''

The question for determination is, does Chap. 196, Laws of 1960, give Perry County the authority to pledge the funds directed to be deposited in the State Treasury to the credit of Perry County known as ''Division of State-Aid Road Construction'' under Sec. 10127, Miss. Code 1942, Rec., so that these funds ''or their equivalent are irrevocably pledged by the State of Mississippi?'' We have reached the conclusion that this question will have to be answered in the negative for the following reasons:

The Legislature passed a sales tax law in 1932. The statute was reenacted, with minor changes, two years later as Chap. 119, Laws of 1934. Section 13 (a) of Chap. 119, Laws of 1934, same being Sec. 10127, Miss. Code of 1942, was amended by Chap. 391, Laws of 1950, and a part of this tax was earmarked for the purpose of building roads in the counties. The law here in question, Chap. 196, Laws 1960, was also made effective on July 1, 1960. The effective date of these two laws, last above-mentioned, is important because it will be observed that the Legislature reserved the right to amend Sec. 10127 in the following language:

''Section 4. All such bonds shall be payable, both principal and interest, *primarily* from the funds allocated to such county under the provisions of section 10127, Mississippi Code, Annotated, *as now or hereafter amended.*'' (Emphasis supplied.) ■■ The bonds authorized by Chap. 196, Laws 1960, are not state bonds nor state obligations. The pertinent part of the first section of

this law is in the following language: "Section 1. *The board of supervisors* of any county is authorized, from time to time, *to issue negotiable bonds of the county* to raise money for the purpose of constructing state-aid roads therein as now or hereafter designated by law." (Emphasis supplied.) It will also be observed that Sec. 12 permits these bonds to be issued "not subject to any limitation as to the amount of indebtedness which a county may incur and are not included in computing the future debt-incurring power of any such county under any present or future law."

 ██ The bond contract authorized by Chap. 196, Laws 1960, is a county and not a state obligation. Moreover, the Legislature reserved the right to amend Sec. 10127, Miss. Code 1942, Rec., and in fact did amend this section so as to make the amendment effective on the same day that Chap. 196, Laws 1960, became effective. It will also be observed that the Legislature directed originally that ten percent of the total amount of taxes collected under the provisions of the Act should be paid into the State Treasury, and that thereafter (about the same time the sales tax was increased) the Legislature amended the law (Sec. 1, Chap. 126, Laws 1958) so as to reduce the percentage of the total amount of taxes collected under the sales tax law from 10% to 6.6%.

This change conclusively demonstrates that the Legislature reserves the right to lower the percentage of taxes it may direct to be paid into the State Treasury to the credit of the special fund designated as the "Division of State-Aid Road Construction."

Moreover, Sec. 4, Chap. 366, Laws 1960, provides that $555,000 each month shall be paid into the special fund known as "State Public School Building Fund", and it is not clear to this Court whether or not the Legislature intended by this paragraph that the funds withdrawn be a part of the funds heretofore reserved to the "Division of State-Aid Road Construction."

We also point out that there are certain words and phrases used in Chap. 196, Laws 1960, which are vague and ambiguous. We have already pointed out that the bonds issued under the authority of the foregoing chapter are county bonds. The county is permitted to issue sixty-five percent of the funds allocated to the county during the preceding fiscal year under provisions of Sec. 10127, Miss. Code 1942, Rec., payable in annual installments over a period of twenty years. It is obvious that the annual payments will not consume all of the funds that may be allocated to the credit of the county in the division of State-Aid Road Construction fund, for the purpose of paying bond installments. The last clause in Sec. 11 of Chap. 196, Laws 1960, is as follows: "* * * and remittance for the payment of such bonds and the interest thereon shall have preference and priority over *any and all other claims upon such funds.*" (Emphasis supplied.) Does this mean that all of the funds deposited to the credit of a county shall remain in the state treasury for the payment of the bonds issued by the county, until all of the bonds are redeemed? If the county could "irrevocably pledge" funds that might be deposited to its credit in the state treasury in a fund designated as "Division of State-Aid Road Construction", would it thereby pledge all of the funds deposited to its credit for the next twenty years?

There is no provision in Chap. 196, Laws 1960, permitting the Board of Supervisors to levy a tax to pay bonds authorized to be issued, but Sec. 13 permits refunding of these bonds under Sec. 4358, et seq. of Miss. Code Recompiled, payable from the same source *"or sources as the bonds refunded* thereby." (Emphasis supplied.) The question therefore arises, does the Legislature intend to permit the counties to levy taxes to pay refunded bonds, or does it mean such sources as it (the Legislature) may provide?

Again, Sec. 10 states "The *principal proceeds* received upon sales and delivery of any bonds issued hereunder shall be paid into the state treasury \* \* \*" (Emphasis supplied.) The question arises, how much is meant by "principal proceeds?"

We point out the foregoing inconsistencies so as to illustrate the difficulty in determining the true legislative intent in our effort to interpret Chap. 196, Laws 1960. It would appear that the Legislature has attempted by this law to permit the counties to issue bonds in the nature of revenue bonds in anticipation of a special fund the Legislature had credited to the counties and deposited in the state treasury. The Legislature reserved the right to amend and the right to abolish these funds. Hence the contract attempted to be made by the county to the effect that the county "irrevocably pledged" the funds "or their equivalent", amounted to no more than the pledge of an anticipated source of revenue expected by the county from the State. The law is not an agreement with the State of Mississippi to pledge the full faith and credit of Mississippi. An amendment of the 1960 law so as to abolish the payment of the funds into the state treasury would not be a constitutional impairment of a contract of the State of Mississippi.

In short, we conclude that Miss. Laws 1960, Chap. 196, is not susceptible of the interpretation suggested by appellee and applied by the decree of the chancery court. The stated ambiguities in the statute reflect that the Legislature did not either expressly, or by clear implication, provide that the full faith and credit of either the state or the county should be pledged to the payment of these bonds. On the contrary, it is manifest that the Legislature did not intend to irrevocably pledge the state to maintaining the state-aid road fund in an amount sufficient to pay the bonds; nor did it irrevocably pledge the full faith and credit of the county to pay it,

although the county has the power under the statute to pledge its share of the state-aid fund to payment of the bonds, whatever that share may be and to the extent that the Legislature has provided it, with the reserved power to modify or eliminate the fund.

■■ ■ It is well-established that the power to issue bonds and the extent of the obligation assumed by their issuance is restricted to the express or clearly implied intention of the Legislature. Any doubt as to existence of the intent to issue full faith and credit bonds is resolved against that intent. See 64 C. J. S., Municipal Corporations, Sec. 1902, p. 475. ■■ ■ The authority to issue securities is delegated by the state. Chap. 196 fails to support any finding of a legislative intent to pledge the full faith and credit of either the state or the county to the payment of these bonds. See 43 Am. Jur., Public Securities and Obligations, Secs. 37, 38. Accordingly, the decree of the trial court adjudicating an irrevocable pledge by the state and the county is not in accord with the terms of the statute.

In the case of Cone v. Hope-Fulton-Emmett Road Improvement District, 169 Ark. 1032, 277 S. W. 544, where a statute provided for the annual distribution by the State Highway Commission of unallotted funds to the respective counties of the state for payment into the highway improvement fund and for paying highway improvement bonds, it was held an amendatory act changing the classification of counties, and the proportion of the funds to be used in the payment of outstanding bonds, and that to be paid into the improvement fund of the counties as classified respectively, did not unconstitutionally impair contract obligations, there being no contract between the bondholders of road improvement districts and the State and Federal Governments by which the revenue of these governments must be applied to the payment of such bonds. See also Michaels v. Barrett, 355 Ill. 175, 188 N. E. 921.

This Court held in the case of Town of Heidelberg v. Jasper County, 218 Miss. 147, 65 So. 2d 463, that a 1950 Act, amending the Laws of 1944 which entitled the Town of Heidelberg to one-third of the oil severance tax collected by the county and reducing it to one-third of the oil tax collected in the town, was not unconstitutional on the ground that the amendment impaired the town's obligations under its contracts with holders of water and sewer system bonds, issued under a resolution of the mayor and board of aldermen in which they pledged seventy-five percent of all revenue collected by the town under the provisions of the laws of 1944.

The textwriter of 43 Am. Jur., Public Securities and Obligations, Sec. 45, p. 305, pointed out that "It is well settled that the provisions of a statute authorizing an issue of bonds by a political subdivision must be strictly pursued. Inasmuch as political subdivisions have no power to issue bonds except by legislative permission, the Legislature, in granting permission to a subdivision to issue its bonds, may impose such conditions as it may choose, and unless the conditions are complied with the issue is unauthorized and the bonds are invalid."

We are therefore finally confronted with the question, —what are the resources from which the bondholders can reasonably expect to collect their loan? The state legislature may abolish the funds it is now depositing in the treasury to the credit of the counties for their use in constructing roads. The bondholders cannot require the state to pay the obligation. The bond itself contains the following language: This bond "is not a general obligation of said county." Unless the Legislature intends these bonds to be general obligations of the county, there is no source from which the obligation can be collected.

The opinion of the chancellor, that the Board of Supervisors of Perry County was authorized by Chap. 196, Laws 1960, to make an irrevocable pledge of funds

allocated to Perry County pursuant to the provisions of Section 10127, Miss. Code 1942, Rec., or their equivalent, and his opinion that the action of the board of supervisors in accepting the bid proposal for the purchase of the state-aid road bonds was authorized by the above-mentioned Laws of 1960, was erroneous. The decree validating said bonds pursuant to the notice, and the proposed bid and resolution accepting the bid containing the recital irrevocably pledging the funds "or their equivalent" allocated to Perry County and deposited in the state treasury in accordance with Sec. 10127, Miss. Code 1942, Rec., was not authorized by Chap. 196, Laws 1960. The decree of the Chancery Court will therefore be reversed, and the petition to validate said bonds be, and it is hereby, dismissed.

Reversed and judgment rendered dismissing petition.

All Justices concur, except Gillespie, J., who took no part.