TRI-COUNTY HIGHWAY IMPROVEMENT DISTRICT *v*. TAYLOR.

Opinion delivered November 16, 1931.

*Horace Sloan,* for appellant.

*Lamb & Adams,* for appellee.

MEHAFFY, J. The appellee filed in the chancery court of Craighead County the following complaint:

"Comes the above-named plaintiff and, complaining of the above-named defendant, for his cause of action states:

"(1) That plaintiff, Walter E. Taylor, is State Bank Commissioner of Arkansas, and as such is in charge of the liquidation of the American Trust Company, insolvent, said bank having been closed and turned over its assets to the State Bank Commissioner on November 1, 1930.

"(2) In the capacity aforesaid, the said plaintiff is the owner and is in possession of the following described lands located in the western district of Craighead County, Arkansas, to-wit:

"South half of the southwest quarter of section seventeen (17), southwest quarter of the northwest quarter section seventeen (17), southeast quarter of the northeast quarter of section eighteen (18), north half of the northeast quarter of section nineteen (19), except ten acres for railroad right-of-way.

"(3) The defendant, Tri-County Highway Improvement District, was created by act No. 186 of the year 1919, (Vol. 1, Road Acts, 1919, p. 510) which said act was amended by act 61, approved at the special session of the Legislature, February 5, 1920 and by act 680, 1921, p. 414, the said Tri-County Highway Improvement District was dissolved, subject to the liquidation of all its debts.

"(4) After considerable litigation, claims of creditors were established against the said district and taxes

were extended against the lands in said district. Suit was finally filed for delinquent taxes, and, on May 18, 1925, this court rendered decree foreclosing lien of said delinquent taxes, and ordering delinquent lands sold. That, among the lands located in the district and so ordered sold, are lands above described by an adequate description, the void description being as follows: 'Pt. NW NE (30a) 19-15-3.'

"The court designated a special commissioner for the purpose of making said sale, and said sale was had on May 21, 1927, at which sale all delinquent lands were struck off and sold to the defendant, and at the August, 1927, term of this court the commissioner made his report of sale, which was duly confirmed, and executed a commissioner's deed, purporting to convey title to the said lands to the defendant.

"(5) The Forty-seventh General Assembly of the State of Arkansas, by act No. 153, approved March 20, 1929 (Acts 1929, p. 785), provided that the said highway commission should ascertain as soon as possible the amount of valid outstanding indebtedness against any road district in this State and pay same, and, after considerable litigation in the courts, said act was sustained by the Supreme Court of Arkansas and all indebtedness of the Tri-County Highway Improvement District was paid and discharged in full. That it was the purpose and intent of said act of the Legislature to relieve the taxpayers and property owners in road improvement districts of this State, and, when all of the indebtedness of the Tri-County Highway Improvement District became paid in full, it was the purpose and intent and necessary effect of said act and payment thereunder that all claims of road improvement districts against the delinquent lands in said district should be terminated and at an end, and that the owner of said property should hold the same free from any claim on the part of said improvement district.

"(6) The Tri-County Highway Improvement District embraces lands in three counties, viz: Craighead,

Poinsett and Greene; that the number of delinquent tracts of land in said district from which a redemption has never been effected are as follows: Craighead County, approximately 800 tracts; Poinsett County, approximately 580 tracts; Greene County, approximately 300 tracts.

"That the lands situated in Craighead and Poinsett counties have been conveyed to the district. By far the majority in number of said tracts of land are wild and unimproved, and, in addition to having these delinquent Tri-County Highway Improvement District taxes thereon, there are delinquent drainage and State and county taxes. In the greater number of instances such wild lands are not worth the total of the delinquent general, highway and drainage taxes now due against the same. Large areas of said delinquent lands consist of wild, flat, post-oak lands underladen with hardpan and of slight fertility, and in most instances the wild lands have been cut over with the result that the timber growing thereon is at present of very slight value.

"The Tri-County Highway Improvement District taxes were originally payable in the years 1921 and 1922, and same have been paid on most lands which are actually being farmed and of real agricultural value. There is no possibility that any appreciable percentage of said delinquent taxes can ever be collected in view of the small value of the delinquent tracts affected as compared with the total tax burden thereon. That there are practically no sales whatever between private parties of wild unimproved lands. The Tri-County Highway Improvement District has no bonds outstanding, and the taxes above levied by it were imposed solely for the purpose of paying off and discharging the preliminary expenses of said district, the unpaid balance of which, as above set out, was paid by the State Highway Department in full.

"(7) By reason of the matters and things stated aforesaid, this plaintiff should be held to own the lands above described free from any claim by the said Tri-County Highway Improvement District, and therefore asks that his title to the lands be quieted and confirmed in him, and that commissioner's deed to the defendant

hereinabove described be set aside, canceled, and held for naught as a cloud upon this plaintiff's title, and for all other proper relief.''

The appellant entered its appearance and filed a demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The court overruled the demurrer, and appellant stood upon its demurrer. The court rendered final decree setting aside the deed to the lands to the Tri-County Highway Improvement District as being a cloud upon the title. The appellant excepted, prayed an appeal to the Supreme Court, which was granted, and the case is here on appeal.

The Tri-County Highway Improvement District was created by an act of the Legislature of 1919. The land involved in this controversy was sold for delinquent assessments and purchased by the district.

The act creating the district and the act amending the act creating the district were both repealed. The repealing act in 1921 authorized and impowered the commissioners to wind up and liquidate all the affairs of said district. In 1927 the Legislature passed an act, the first section of which reads as follows: ''It is hereby declared to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State comprising State highways as herein defined.'' Act 11 of the Acts of 1927.

The Legislature in 1929 passed act 153, reciting that there was an extensive amount of indebtedness against road improvement districts, and that no provision was made for the payment of these obligations by act 11 of 1927, and this act, No. 153, provided that the highway commissioner should ascertain the outstanding indebtedness of road districts organized prior to 1927 and pay such indebtedness.

It is the contention of the appellant that the donation made to pay the indebtedness of road districts was a donation to the district as such, and not merely to one class of property owners, namely, delinquent property owners.

The only thing, therefore, for us to determine is what was the intention of the Legislature in passing the act for the payment of the indebtedness of road districts.

Appellant states that there are three possible views to take of the effect of payment by the State. One is that when the indebtedness of the district was all paid, that the State became subrogated to the claims of creditors, and that the proceeds of collections, less the cost of collecting, should be paid to the State and credited to the highway fund. However, both the appellant and the appellee argue that this could not have been the intention, and that the State could not be subrogated to the claims of the creditors. That the State was a volunteer in the payment of these claims cannot be controverted.

It would therefore not be entitled to subrogation. *N. Y. Life Ins. Co.* v. *Nichol*, 170 Ark. 791, 281 S. W. 21; *Grable* v. *Blackwood*, 180 Ark. 311, 22 S. W. (2d) 41. We think it therefore clear that it was not the intention of the Legislature that the land in controversy should belong to the State, or that the proceeds from the sale of the land should belong to the State.

It is contended, however, by the appellant, that the act was intended for the relief of all the landowners in the district, or the district as a whole, and that the payment of delinquent taxes should be enforced and the collections divided among all the property owners in the district, so that the payment would inure to the benefit of all owners alike.

Appellant argues that, as evidenced by the title of the act, the Legislature intended that the donation was for the benefit of all the landowners in the district, or of the district as a whole, the title of the act being "An act in aid of road districts in the State of Arkansas." However, the act does not provide for the refunding of any money to taxpayers who have already paid their taxes, but expressly provides for the payment of outstanding indebtedness.

It is a matter of common knowledge that many landowners in improvement districts all over the State of

Arkansas were unable to pay their assessments, and, unless aided by the State, would lose their land, and it was, we think, the intention of the Legislature in passing the act to pay the debts and relieve these persons who had been unable to pay.

It would be manifestly unjust to sell these lands, deprive the owners of them, and distribute the proceeds among all the taxpayers in the district, because the money with which these debts were paid was received from taxes collected from all the people in the State; therefore, if the land could be sold and the proceeds distributed at all, it should be distributed to all the taxpayers in the State, which would be impractical, and the cost of distributing the funds would exceed the amount for which the lands would sell. Evidently the Legislature did not intend this.

The act creating the improvement district has been repealed, the district abolished, and the road taken over by the State. We must presume that the Legislature, in passing the statute, acted with a full knowledge of all these facts, and we must also presume that the Legislature did not intend any absurd or impractical consequences.

The Legislature knew the conditions of the country, knew that much of the land in many improvement districts were being sold to pay the taxes, and knew that many landowners were unable to pay, and, unless they received aid from the State, they would lose their lands.

"Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object, it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one, and the statute should be given that construction which is best calculated to advance its object by suppressing the mischief and securing the benefits intended. For the purpose of determining the meaning, although not the validity, of a statute, recourse may be had to considerations of public policy and to the established policy

of the Legislature as disclosed by a general course of legislation." 36 Cyc. 1110.

We think when the statute is considered as a whole, taking into consideration the object intended to be accomplished, which was manifestly to relieve persons unable to pay their taxes, and delinquent landowners as well as debts of the district, it shows the intention of the Legislature to relieve the delinquent landowners.

The decree is affirmed.