458

**LAKE CITY, NETTLETON & BAY ROAD IMPROVEMENT DIST. NO. 1 OF CRAIGHEAD COUNTY, ARK., et al., v. LUEHRMANN et al.**

No. 11516.

Circuit Court of Appeals, Eighth Circuit.

March 7, 1940.

On Rehearing July 16, 1940.

Arthur L. Adams, of Jonesboro, Ark. (H. M. Cooley, of Jonesboro, Ark., on the brief), for appellants.

J. B. Daggett, of Marianna, Ark. (Daggett & Daggett and C. E. Daggett, all of Marianna, Ark., on the brief), for appellees.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

The Lake City, Nettleton and Bay Road Improvement District No. 1 of Craighead County, Arkansas, and the Commissioners of said District, hereinafter called the District, appeal from a judgment holding it liable for the amount of the principal and interest on certain bonds held by plaintiff Luehrmann. Plaintiff Luehrmann filed his complaint on July 21, 1937, in law, seeking judgment against the District in the sum of $12,055, with interest as provided by law and the terms and conditions of said bonds and pledge. The District filed its answer, asserting, among other defenses, that the plaintiff had agreed to the provisions of certain refunding acts passed by the State of Arkansas; that he accepted payment of interest coupons which had been paid by funds furnished by the State, and "by the acceptance of these benefits from such transaction, with full knowledge and notice of the facts and plaintiff's rights, he has created an estoppel and has ratified and accepted the contract and settlement proposed by the Bondholders' Committee and the representatives of the State and the Refunding Board, and said plaintiff is now estopped from seeking special relief and special payment of his alleged bonds and interest coupons and he should be required to carry out the terms of his agreement, and refund said bonds as other bondholders have done, there being at present only $13,000 of principal bonds in this District held by bondholders that have not refunded their bonds, and this plaintiff claiming to hold $10,000 of the same."

Before this proceeding came to trial, and on September 3, 1938, plaintiff Luehrmann filed his complaint in equity, with the Mississippi Valley Trust Company, trustee, as joint plaintiff. The allegations of the complaint in law were repeated, but they asked that the Commissioners of the District be appointed receivers and under direction of the court be directed to levy a tax and pay the bonds owned by plaintiff Luehrmann. Judgment for $12,055, with interest, was prayed for as in the action at law. Application for the appointment of receivers was denied, and on November 19, 1938, the actions were consolidated and plaintiffs were permitted to amend the prayer of their complaint to read as follows: "That the defendants, the Commissioners of the Lake City, Nettleton and Bay Road Improvement District, if and when judgment against the District has been entered, that it be ordered and directed to take such steps as are necessary to extend the levy on the assessment of benefits against the real property including lands, tramroads, and railroads within said improvement district, and collect the same in the manner provided by the statutes in such cases made and provided."

Later, the matter was submitted to the court on stipulated facts, the pertinent

portions of which may be summarized as follows. That the District was duly organized under the Arkansas law, and on May 1, 1919, issued, according to law, its negotiable bonds in the sum of $425,000, bearing interest at five and one-half per cent per annum; that the bonds held by plaintiff Luehrmann in the principal sum of $10,000 are of said issue, and of said bonds so held by him, some matured on August 1, 1935, and the balance on August 1, 1936; that upon the maturity of interest coupons, they were deposited by plaintiff Luehrmann with the Boatmen's National Bank of St. Louis for collection; that the bank made collections for him as agent, and interest was paid up to and including February 1, 1932; that when the bonds were issued, the District proceeded to levy taxes to meet the bonds and coupons until the passage of the so-called Martineau Road Law, Act No. 11, p. 17, approved February 4, 1927, and the supplementary acts of that year; that since the passage of said acts, the District no longer collected any taxes to meet the bond payments, and no levy and extension of the tax, as required by the terms of the levying order originally filed with the bond pledge, has been made since 1927; that the interest payments on the bonds after 1927, and until 1932, were made by the State under the Act of 1927 and acts amendatory; that the State undertook to relieve all assessments against the landowners in the District and undertook to pay the debts incurred by the road districts eligible thereunder, including this defendant District; that "negotiations were then carried on between bondholders and the State, which finally resulted in the enactment of Act No. 11 for the year 1934 [2d Ex.Sess., p. 28]"; that there are available to plaintiff Luehrmann, pursuant to this act, Series B refunding bonds to cover the interest on his bonds for the years 1932 to 1934, the date of the issuance of the refunding bonds; that Series A refunding bonds, which will mature January 1, 1949, with interest at three and one-half per cent per annum, are available to plaintiff Luehrmann to be given in exchange for the bonds which he now holds, but he has refused and neglected to deposit with the Refunding Board the bonds and coupons sued upon herein. It was further stipulated that "the original bonds and coupons sued on herein by plaintiff will be produced and filed with the Clerk of this Court at the final hearing."

The court made its findings wherein it found that the bonds held by plaintiff Luehrmann were a part of the original issue of $425,000; that they were purchased for a valuable consideration; that they were eligible under Act No. 11 of the Acts of 1934, 2d Ex.Sess., for exchange for Road District Refunding Bonds, Series A and B, but that plaintiff Luehrmann has refused, and does refuse, to exchange the said bonds for Road District Refunding Bonds; that there was due and unpaid as principal and interest the sum of $14,584.82 as of January 16, 1939. In its conclusions of law, the court provided:

"I. The plaintiff, George E. W. Luehrmann, is entitled to a decree against the defendant, Lake City, Nettleton & Bay Road Improvement District No. One of Craighead County, Arkansas, in the sum of $14,584.82, with interest thereon at the rate of 6 per cent from January 16, 1939, and in order to secure the full payment and satisfaction of said judgment is entitled to foreclosure of the pledge of assessment of benefits levied upon each tract and parcel of land and railroad right-of-way in said district and to an order requiring the Commissioners of said district and the Clerk and Collector of Craighead County, and their successors in office, to take such steps as may be necessary, when ordered by the court, to extend, levy and collect such tax against the assessment of benefits as may be necessary to pay the full amount of said judgment, with interest thereon and all costs of collection.

"II. It appearing that the bonds sued on herein are valid and eligible under the provisions of Act No. 11 of the 2nd Extraordinary Session of the 49th General Assembly of Arkansas, approved February 12, 1934, for exchange for State of Arkansas Road District Refunding Bonds, the court finds that in order that the taxpayers of the defendant road improvement district may obtain the greatest measure of assistance possible in the liquidation of the aforesaid indebtedness, said bonds should not be cancelled but should be committed to the custody of a custodian designated by the court and by it tendered to the State Refunding Board in exchange for the State of Arkansas Road District Refunding Bonds applicable thereto, and that said Refunding Bonds when issued should be placed and remain in possession of said custodian and should from time to time be tendered under

the provisions of said Act for purchase and redemption by the State of Arkansas, or by the custodian sold on the open market, and the proceeds of such purchase and redemption or sale applied upon and in reduction of the judgment hereinafter entered. The acceptance by the plaintiff of payments upon said judgment made with moneys derived from the purchase and redemption or sale of said State of Arkansas Road District Refunding Bonds and from the collection of interest thereon and the credit of the same upon said judgment shall in no way prejudice the rights of the said plaintiff to have said judgment or any unpaid part thereof liquidated by the extension, levy and collection of such taxes as may be necessary therefor, against the assessment of benefits in said district."

The decree that was entered provided that plaintiff Luehrmann's bonds be not cancelled, but that they be delivered to the Union National Bank of Little Rock, Arkansas, as custodian; that the custodian forthwith tender the same to the Refunding Board of Arkansas for exchange for Arkansas Road District Refunding Bonds, Series A and B; that "upon delivery of the said Refunding Bonds to the said bank, the bank shall first cause each of said principal bonds to be registered upon the books kept for that purpose by the Treasurer of the State of Arkansas in the name of said bank as custodian under the order of this court. * * *" The decree further provided that the custodian bank, upon being notified by the Treasurer of the State of the time and place of the tender of such bonds for purchase and redemption, should notify the court, and under direction of the court, and at such prices as may be approved by the court, tender the Refunding Bonds as provided in Sections 37 and 38 of Act No. 11 of the Acts of 1934, 2d Ex.Sess., pp. 62, 64; that upon the acceptance, the custodian should deliver such bonds to the Board and Treasurer. The decree also provided that, in lieu of the provision for tender, the custodian might sell the bonds on the open market for the highest price obtainable therefor; that after payment of fees and expenses, the amount realized from the sale of the Refunding Bonds should be applied to the judgment entered in favor of plaintiff Luehrmann, but the decree specifically provided that the acceptance of any sum by him should in no way prejudice any proceeding to enforce his remedies against the District for the collection of the balance.

It appears that, in pursuance of the decree, the District bonds were delivered to the custodian by plaintiff Luehrmann and thereafter exchanged by the custodian for Arkansas Road District Refunding Bonds, Series A and B; that the court thereafter ordered the custodian to tender the bonds held by it to the Refunding Board, $10,000 in principal amount of Series A bonds and $1,054.10 in principal amount of Series B bonds at a price to be determined by the custodian, but not less than eighty cents on the dollar for the Series A bonds, and not less than fifty-seven cents on the dollar for the Series B bonds. In April, 1939, the custodian tendered and sold to said Refunding Board all of the Series A bonds at $84.65 flat, receiving therefor the sum of $8,465, and tendered and sold to said Refunding Board all of the Series B bonds at $61.10, receiving therefor $644.05. In addition, interest coupons in the sum of $1,500 had already been collected. The court approved the sale, allowed expenses and costs of the custodian and plaintiff Luehrmann, and a net of $10,361.15 was turned over to Luehrmann, after which, by power of attorney, he authorized the Clerk of Court to endorse upon the record the amount so received as a credit upon the judgment entered against the District.

The position of the defendant District is disclosed by the following assignments of error, which may be summarized as follows: (1) That no sum was due plaintiff Luehrmann from the District because he had, prior to the commencement of this action, accepted the plan of refinancing the road district indebtedness, as evidenced by the Acts of 1927 and acts amendatory, by receiving and retaining payments of interest on his bonds from funds provided by the acts of the Legislature referred to, and with full knowledge of the intent and purpose thereof, he is now estopped from seeking special relief against the District; (2) that plaintiff Luehrmann has accepted a new debtor through his acceptance of payments made by the Refunding Board and the State Highway Department, and that by accepting payments of his interest coupons from these state agencies, with full knowledge and notice of the facts, there has been a novation, and therefore no recovery can be had against the District; (3) that by reason of plaintiff Luehrmann's neglect to take any action to foreclose his bonds for a period of twelve years, he is guilty of laches; (4) while excepting to the various steps taken by plaintiff Luehr-

mann in obtaining his judgment against the District and proceeding to obtain the benefits of the Refunding Act notwithstanding, the District urges that the decree of the court, with the acceptance and sale of refunding bonds by Luehrmann, is but the ratification and adoption of the State's refunding plan previously recognized and participated in by him, and that he must now be held to have accepted the provisions of said Refunding Acts and amendatory acts referred to and the judgment heretofore entered should therefore be satisfied. There are other assignments of error which we do not deem it necessary to discuss.

We will first consider assignments of error Nos. 1 and 2. As we understand the District's position in this regard, it contends that the so-called Martineau Road Law and acts supplemental and amendatory thereto, made the outstanding obligations of the local road improvement districts, incurred prior to January 1, 1927, primary obligations of the State of Arkansas, and by the acceptance of its benefits by plaintiff Luehrmann, the local road improvement districts were relieved from the direct obligation of payment of his outstanding bonds; that therefore he is precluded from recovering herein.

A brief history of the pertinent legislation may be helpful. Prior to 1923, it appeared that, by reason of oppressive taxes, many property owners in Arkansas were failing to pay taxes, homes were being lost for non-payment of improvement district taxes, and the situation was acute. By Act No. 5 of the Acts of 1923, Ex.Sess., p. 11, under the so-called Harrelson Road Law, a State Highway Commission was established and a state highway fund was created. It was provided that the State Highway Commission should ascertain the amount and dates of maturities of the principal of the valid, unmatured bonds outstanding as of January 1, 1924, which had been issued by the road improvement districts of the State for improvement of public roads; that the sum of $3,000,000 should be allocated to the counties in certain proportions and for certain specified purposes in aid of the road districts for each of the fiscal years ending July 1, 1924, and 1925. Section 23 requires the Commission to estimate the amount available to each district "as a participation in the payment of the bonds issued by road improvement districts before the passage of this act, and shall certify to the county clerk of each county the amount in dollars and cents that will be available before July 1st of the next calendar year, as partial payment to apply on the outstanding bonds and interest coupons of the respective road improvement districts in that county maturing between July 1st of that year and July 1st of the year following"; and provided further that the secretary of these road improvement districts shall call a meeting of the Board, who shall "by proper resolution, or in other appropriate manner cause the tax in such road improvement district, collectible at tax paying time in the ensuing year, to be reduced against each tract of land in the district, pro rata in an aggregate amount equal to the amount in dollars and cents of the contribution to be made in the ensuing year * * *." Section 23 further provided that "nothing herein contained shall impair the obligations of any of said bonds or the duty of such commissioners and all other officers having to do with the levying, extending and collecting taxes sufficient to promptly pay all maturities of principal and interest of the bonds issued by said district."

A reference to these sections, and there is nothing in the act inconsistent therewith, clearly demonstrates that the State merely provided funds with which to assist the various road districts in meeting the road district bonds which matured in 1924 and 1925. The State did not thereby become the primary debtor, and any contribution made by it was a mere donation to the District to assist it in the emergency. It will be observed that the District was obliged to levy assessments in order to make up the deficiency, and its obligation to pay the bonds remained intact and was unimpaired. In making this donation, the State did not bind itself to do any more than to make the appropriation indicated in order to assist the District in meeting its obligations, and this act limited the assistance to the obligations which matured in 1924 and 1925. Under the 1923 Act, the funds furnished by the State were remitted to the officials of the road districts, and by them remitted to the paying agent of the District under the pledge.

The Martineau Road Law was passed in 1927 and is known as Act No. 11 of the Acts of 1927. This statute amended the Harrelson Road Law. Section 1 provides that: "It is hereby declared to be the policy of the State to take over, construct, repair,

maintain and control all the public roads in the State comprising the state highways as defined herein." Section 3 provides that the Commission shall determine the outstanding, valid bonds issued by road improvement districts. The act provides that, beginning with the year 1927, there shall be allotted to each road district "an amount equal to its bonds maturing during the year, together with the interest payable by such districts during the year, plus a paying charge of one eighth of one per cent of bonds to be paid and one fourth of one per cent of interest to be paid, and shall certify to the State Auditor the amount allotted to each road District." The auditor was required to issue warrants to the bank or trust company named as payee in the pledge or mortgage of the road district, and in the event the amount appropriated, to wit, $6,500,000, was insufficient to pay in full maturing bonds and interest for the year, the appropriation was to be pro-rated. The Commission was required to notify the District before September 1st of each year as to the amount of the appropriation to it for the fiscal year, and the road tax against each tract of land was to be reduced accordingly. There was appropriated for the fiscal year beginning March 1, 1927, $6,500,000, and for the succeeding year the same amount. The act apparently contemplated the raising of most of these funds from the gasoline and motor vehicle taxes.

It is quite apparent from the 1927 amendment that the State of Arkansas launched on a comprehensive program which provided that exclusive jurisdiction should be vested in the State Highway Department of all roads comprising the state highway system, and that the various road districts should be relieved of the immediate obligations maturing on their outstanding bonds by way of principal and interest. The appropriation, however, was only intended to cover the two years mentioned. The limitation was apparently in recognition of the restrictions of the Arkansas Constitution, Article V, Section 29. Subsequent appropriations were made in 1929, but the State failed to retire all of the bonds by the legislation thus devised.

Reference to the effectiveness of this legislation may be found in Cherry v. Leonard, 189 Ark. 869, 75 S.W.2d 401, 402, wherein the court stated: "We think it unnecessary to go into the complete and detailed history of the so-called Martineau Act * * *. It will be sufficient, however, to say that at the time of the passage of Act No. 11 [1934], under consideration, the state had already defaulted in payments of its several obligations. Decreased revenue available for payment of these obligations, and extremely heavy bonded indebtedness, were such that under the conditions that prevailed, suits had been filed and the funds of the state, whatever they were, were held under orders impounding the same, and it was seemingly impossible, under the then existing statutory authority, for the state to meet its obligations."

The failure, therefore, of the so-called Martineau Road Law led to the passage of Act No. 11 of the Acts of 1934, 2d Ex.Sess. But, however one may characterize the Martineau Road Law, it is clear that it was not a refunding act. It was an attempt by the State to raise sufficient funds by the means set up in the act so as to meet the maturing bond interest of the road districts from year to year. But the entire plan bogged down, and plaintiff Luehrmann's bonds, which matured in 1935 and 1936, were not paid. Whatever bond interest he may have received from 1927 to 1932 from the paying agent under this plan, could not, under any circumstances, be said to relieve the Road District of its obligation on the bonds, nor did it substitute the State as the primary debtor. It is clear that the State did not contract to do anything except to provide, as far as possible, funds from year to year with which to meet the debts of the road districts. Certainly, if one can spell out of the acts referred to a contract between the State and the District and an obligation on the part of the State to pay the debts of the District, it cannot impair the contract rights between the bondholders and the District. It is elementary that the complete assumption by the State would not, under the circumstances herein, relieve the District from its obligations arising on the bonds.

It is conceded that, while plaintiff received his interest from 1927 to 1932 with funds provided by the State under the 1927 Act, no further payments were made to him by way of interest or principal from any source. Under these circumstances, there can be no estoppel (G. Amsinck & Co. v. Springfield Grocery Company, 8 Cir., 7 F. 2d 855), and plaintiff was in a position to proceed against the District and recover and enforce judgment in the amount due on his bonds. Nor do the admitted facts, prior to the beginning of this action, give rise to a novation. Trent v. Johnson, 185 Ark. 288, 47 S.W.2d 12, 80 A.L.R. 1431. Up to the

time the suit was instituted, there had never been a substitution of a new debt or debtor by consent of both the parties, nor was the old obligation extinguished. The 1927 Act does not pretend to provide for a substitution of debtors. Any assistance given by the State under the act was a mere gratuity and donation to the Road District in order to help it in its distress. Cone v. Hope-Fulton-Emmett Road Improvement District, 169 Ark. 1032, 277 S.W. 544; Tri-County Highway District v. Taylor, 184 Ark. 675, 43 S.W.2d 231; Page v. Rodgers, Ark., decided November 27, 1939, 134 S.W.2d 573.

In referring to the bonds of road districts and the various acts of the Legislature in aid of such districts, the Arkansas Supreme Court in Cone v. Hope-Fulton-Emmett Road Improvement District, supra, used the following language at page 1038 of 169 Ark. 277 S.W. at page 546: "The bonds are secured by levies or improvement taxes levied on the assessment of benefits on the lands according to the statutes under which the districts are created. If the state and federal governments, in aid of the taxpayers of improvement district taxes and the bondholders of the district, set apart a portion of their revenues to be applied on the payment of bonds, such act on the part of the sovereign is a gratuity rather than a contract."

The defendant District urges that this suit cannot be maintained on account of laches, but that this defense is unavailable is evident. It is based apparently upon defendants' showing that no taxes were collected in 1927 and thereafter, because the State made the payments of interest until 1932, and that no demand has been made by plaintiff Luehrmann for the payment of his bonds and interest since that time, nor until this suit was instituted. The answer to defendants' contention is obvious. Luehrmann was in no position to demand payment of the interest until default was made. His bonds did not mature until 1935 and 1936. Failure of the State to continue its donations could not have been anticipated by him. Suit was commenced in 1937 on the bonds maturing in 1935 and 1936. These facts certainly do not indicate inaction, and there was no refunding plan of which he could have availed himself until 1934.

We are clear, therefore, that when this suit was commenced against the District, plaintiff Luehrmann, notwithstanding his acceptance of interest, the source of which was state funds and presumably known by him to be the funds provided in pursuance of the Martineau Road Law, was free to pursue his remedy against the District for the balance due on his bonds and avail himself of the remedies afforded under the pledge to enforce against the District the payment of the amount due. He was not obliged to question the source of the payment, nor was he prejudiced by not doing so.

The 1934 Act, in so far as it is pertinent herein, authorizes the issuance of Road District Refunding Bonds, Series A, in a sum not exceeding the aggregate amount of all outstanding, valid road district bonds on which the State had been paying interest under Act No. 11 of the Acts of 1927. It provided that said refunding bonds should be used exclusively for the refunding of such and similar obligations. That the refunding was optional is settled by the following provisions of Section 6 of the Act:

"* * * The holder of any such road district bond may deposit such bond, together with all unpaid coupons with the Treasurer of State and the Refunding Board, for refunding under the provisions of this Act. * * * Such road improvement district bond shall be held by the Treasurer of State and the Refunding Board, in the State Treasury in trust, uncancelled, and not defaced in any manner, as collateral security for the refunding bond for which it was issued. * * *

"It is the intention of this Act to preserve all rights which the holders of said road improvement district bonds now have or may have had at the time of the issuance thereof, so long as said bond remains upon deposit as herein provided, and to suspend during said time all limitations of actions to enforce said rights.

"If default shall be made in the payment of either interest or principal of any road district refunding bond, or in the payment of any bond issued to refund interest upon the bond in exchange for which such road district refunding bond was issued, and such default shall continue until two interest coupons attached to said bonds shall be past due and unpaid, or should the State fail to keep and observe all conditions and covenants herein contained with respect to the road improvement district bond and the refunding bond issued in exchange therefor, the holder of said refunding bond shall have the right to have the road district bond for which such refunding bond was issued returned to him upon the sur-

render to and cancellation by the Treasurer of State of such road district refunding bond."

The act also provides in Sections 37 and 38 that when the road district refunding bond redemption account reaches a certain sum, the State Treasurer shall call for tender of outstanding road district refunding bonds and purchase the obligations tendered at the lowest price submitted. Section 6 of the Act provides that "upon the payment of any road district refunding bond such bond, and also the road district bond in exchange for which said road district refunding bond was issued shall be cancelled by the Treasurer of State by perforation." The act further provides that when all bonds of a particular issue have, according to the records of the State Treasurer, been cancelled, a certificate to that effect is to be sent to the Clerk of the Circuit Court of the county where the mortgage or pledge is filed and a due satisfaction thereof is to be entered by the Clerk.

The District urges that when Act No. 11 of the Acts of 1934, 2d Ex.Sess., was passed, it was the result of a settlement and compromise between the State of Arkansas and the bondholders. This is the assertion in Cherry v. Leonard, supra, which construed the act, and a recital to that effect appears in the stipulation of facts. Apparently, one gathers that generous concessions were made by the bondholders in these negotiations looking to the solution of the critical situation which confronted the State. It is under these circumstances that the District contends that plaintiff Luehrmann as a bondholder is required to seek the benefits of this Refunding Act, and that he has no recourse against the District unless the State fails to carry out its contract thereunder. However, there is an utter absence of any showing that plaintiff personally took part in any such negotiations or bound himself to accept the benefits of the 1934 Act. Presumably, there were meetings between groups of bondholders and representatives of the State, and such negotiations and conferences may have brought about the passage of the act. The general language in Cherry v. Leonard, supra, and Scougale v. Page, 194 Ark. 280, 106 S.W.2d 1023, with reference to the 1934 Act and negotiations between bondholders and committees representing the State and the agreement between said groups, is not authority for

defendants' position. Such cases merely recite the historical background of the legislation, and it must be evident that they are not to be construed as holding that every bondholder became bound by the action of certain self-appointed groups. It is elementary that the negotiations of the parties cannot be material, or in any event binding upon anyone in absence of ambiguity of the legislation thereafter enacted. This statute is clear and free from any uncertainty as to its effect upon nonassenting bondholders. But whatever prompted the passage of the act, a mere reading thereof demonstrates that the acceptance of its benefits is optional with the bondholders. The Legislature may have assumed that they would avail themselves of the 1934 refunding legislation, and presumably the large majority of the holders of road district bonds did so. But the Legislature did not intend to make it compulsory, and constitutionally probably could not have done so.

What, then, is the effect of the steps taken by plaintiff Luehrmann in exchanging his district bonds for road district refunding bonds, in accordance with the decree? It will be observed that the only recourse that a holder of a road district refunding bond obtained against the District was upon the failure of the State to perform its contract. No action could be taken on the original obligation until the State had defaulted in paying two interest coupons. If the holder of a refunding bond, therefore, is paid, it necessarily follows that no rights can be reserved as against the District. If he makes the exchange under the act and later tenders the refunding bond to the Treasurer, and it is accepted, then obviously both the obligation of the State and the obligation of the District have been fulfilled and satisfied. Under the act, both bonds must be cancelled. It is apparent, therefore, that, upon the exchange being made as heretofore recited, the State became indebted to Luehrmann on the refunding bonds, and the district bonds, whether held by the State or the custodian appointed by the court, were collateral security therefor. Upon payment of the primary obligation, the collateral security no longer exists. It was extinguished. The act of the custodian was the act of the bondholder, and plaintiff Luehrmann, by proceeding through the custodian and accepting the proceeds of the sale of the refunding bonds has effectively

accepted the benefits of the Refunding Act of 1934. That he accepted the provisions of the act in conformance with the decree of the court does not lessen the effectiveness of his acceptance. The entire arrangement as reflected by the decree was acquiesced in and agreed to by him. He took no exception to it.

The State did not default in its contract. It purchased the bonds from plaintiff Luehrmann according to the provisions of the act when tenders were called for. Under these circumstances, Luehrmann has lost his right to enforce any deficiency judgment against the District. He has incapacitated himself from delivering any bonds to the District upon the satisfaction of the decree herein. The State has the District bonds, or has destroyed them in accordance with the act. Under the admitted circumstances, he cannot revive the original contract that existed between him and the District. That contract has now been satisfied and extinguished by law. By his acts, he has accepted a new debtor, and a new obligation has been created which has now been satisfied. The foregoing propositions seem so elementary that we forego the citation of any authorities in support thereof.

It may be observed in passing that the explanation given for the procedure adopted appears in the plaintiffs' brief. Apparently, prior hereto, in similar litigation, by consent of all the parties, decrees for the full amount of the District bonds were entered against the Districts. The bonds, instead of being cancelled, were delivered to a custodian, and then surrendered to the State Refunding Board for refunding bonds. Later, refunding bonds were tendered under the terms of the act to the State for redemption. The proceeds were received, paid to the bondholders, credited on the decree, and an order then entered by the court directing the Commissioners of the District to levy a tax to pay the balance due. Assuming that such procedure may be followed if it is consented to by all the parties, it appears herein that such procedure was adopted over the protest of the defendants, and if plaintiff Luehrmann, notwithstanding the protest of the defendants, deems that it should be followed, he must be bound by the obvious results thereof. He had the option to enforce his bonds with the aid of the usual and customary remedies, or, if he elected, to refund them in accordance with the act. He cannot do both. He has elected to refund his bonds and thereby has become bound by the provisions of the Refunding Act. It may be that the court herein was prompted to adopt the procedure indicated in view of the bondholder's insistence on enforcing his rights against the District. The court may have reasoned that the Road District and the landowners received substantially the benefits of the Refunding Act, and the demands of the dissenting bondholder were met. It may have seemed to the court, under all the circumstances, as an equitable disposition of the dilemma. But it cannot be sanctioned over the objection of the District, and it is clearly contrary to law. Nor can the apparent co-operation of the state officials in circumventing the statute militate against the rights of the District. The 1934 Act created a contract between the State and the District. Section 44 of Act No. 11 of the Acts of 1934, 2d Ex. Sess., p. 67, provides: "In consideration of the concessions made by the creditors of the State as to amounts to be received, or in the interest rates or dates of payment of their respective obligations, by the acceptance of refunding obligations issued under the provisions of this Act in exchange for their existing obligations, this Act shall constitute a contract between the State and such creditors, including the affected Improvement Districts, and the terms of such contract or contracts shall never be impaired by any subsequent legislation."

The law provides that when the State performs its contract under the Refunding Act in discharging the obligation of the District, the latter is released. The State having fulfilled its contract with the District at the instance of plaintiff Luehrmann, it indubitably follows that he has lost his right to proceed any further herein.

The judgment must be reversed, with directions to satisfy and discharge the judgment entered against the defendant District.

## On Rehearing.

### PER CURIAM.

The petition for rehearing was granted, in that it was determined that further consideration should be given to our holding that plaintiff Luehrmann had accepted the provisions of the Refunding Act, and that, upon purchase of the bonds by the State and the acceptance of the proceeds of the

sale, he lost his right to enforce his deficiency decree against the District. In the original opinion, we expressed the view that Luehrmann had the option to enforce his bonds against the District, or, if he elected, to refund them in accordance with the act. We concluded that he could not do both over the objection of the District. In that he had elected to refund his bonds, it was our view that he thereby became bound by the provisions of the Refunding Act.

It is earnestly contended, however, that because of certain statements in Luehrmann's brief, we were misled in assuming that the District opposed the procedure adopted. The brief contains a reference to the procedure adopted in similar situations where bondholders refused to accept the terms of the Refunding Act and the parties thereupon devised a plan to obtain for the District the benefit of the act without requiring the bondholder to release his claim against it. The brief continues (page 16):

"In such suits (not however in the case at bar) after numerous conferences between attorneys representing the plaintiffs, the districts and the members of the State Refunding Board, and the District Judge, the following plan was agreed upon: The defendant districts should file answers and motions to transfer the pending suits to equity. Decrees for the full face amount of the district bonds were entered against the districts. Instead of the road district bonds being cancelled, they were ordered by the Court delivered to a 'custodian,' such 'custodian' to surrender same to the State Refunding Board and receive in exchange therefor refunding bonds, and at stated intervals such refunding bonds to be tendered under the terms of the act to the State for redemption, the proceeds received, paid to the plaintiff and credited on the decree, an order then to be entered by the Court directing the commissioners of the defendant district to levy a tax to pay the balance due, if any, on the decree.

"The net result of such procedure being: The road districts and the landowners received the full benefit of the Refunding Act and at the same time the demands of the dissenting bondholder were met. In all cases except the case at bar, this procedure was adopted by agreement of parties, and in the case at bar, the lower court, over the protest of the defendant adopted such procedure."

We did consider the effect of certain requested findings of fact and conclusions of law proffered by the District which seemed to be in harmony with the procedure adopted by the court, but plaintiffs' own interpretation of the situation in stating that "the lower court over the protest of the defendant adopted such procedure," seemed at least persuasive. Upon rehearing, plaintiff Luehrmann contends that this statement was "loosely used," and the protest he referred to was the objection of the District to any judgment being entered against it by reason of the defenses urged, and "the 'protest' made, and only made, subsequent to the time at which defendant had requested the court to take, and the court had taken, the action now forming the subject of this controversy." He contends that the record, fairly considered, requires a finding that the procedure adopted by the court was not only acquiesced in by the District, but expressly adopted by it; that any error was invited by the District; that no party can complain of an error procured or acquiesced in by him; and that, regardless of any error in the brief in characterizing the District's position, the record must control.

The entire situation is clarified by a memorandum of the trial court which was made part of the record by stipulation of the parties at the time arguments were heard on the rehearing, and which was not before us in the original record or briefs. This memorandum is dated January 20, 1939, and apparently was filed by the court before the findings were submitted. It reads: "The court has gone carefully and given ample consideration to the able briefs filed in this case, and is of the opinion that a judgment should be rendered for the amount of the bonds sued on here, and in order to save the landowners it is ordered that the bonds be delivered to the custodian of this court, who shall refund the same, sell the refunding bonds and apply the proceeds thereof to the payment of the decree, and the Commissioners of the District shall levy a tax against the assessed benefits on the lands in the District for the satisfaction for the balance due on said judgment. You will therefore prepare findings of fact, conclusions of law, and decree in accordance therewith."

After hearing the evidence, the court had evidently determined that plaintiff Luehrmann had not lost his remedy against the District by reason of the refunding statutes, estoppel, laches, or novation, and

that, therefore, the District was without any defense. It concluded that he was entitled to judgment against the District for the full amount of his bonds, with the right to levy against the assessment of benefits in the District and tax sufficient to discharge the judgment. In response to the request in the court's memorandum that the parties prepare findings of fact and conclusions of law, the plaintiffs submitted, among others, the following findings of fact:

"III. Default was made by the defendant road improvement district in the payment of the interest on said bonds falling due on and subsequent to August 1, 1932, since which date no payments have been made upon said principal bonds or interest coupons. There is now due and unpaid as principal and interest on said bonds the sum of $14,584.82 as of January 16, 1939. The plaintiff, George E. W. Luehrmann, is the owner of said unpaid bonds and coupons and has this day exhibited the same in evidence in this action and the defendant road improvement district is indebted to plaintiff, George E. W. Luehrmann, on account of principal and interest, in the sum of $14,584.82, as of January 16, 1939.

"IV. The aforesaid bonds are valid and eligible under the provisions of Act 11 of the Second Extraordinary Session of the 49th General Assembly of Arkansas, approved February 12, 1934, for exchange for road district refunding bonds, Series A and Series B, the issuance of which in exchange for road improvement district bonds is authorized by the provisions of said Act, but the plaintiff, George E. W. Luehrmann, has refused and does refuse to exchange the said bonds for road district refunding bonds."

And in response to the court's request, the District prepared "Requested Additional, and Amendments to, Findings of Fact proposed by Plaintiff," as recited above, as follows:

"III. By striking out the figures '$14,584.82' in line five of plaintiff's Finding No. III, and inserting in its stead the figures '$13,789.50.'

"IV. By striking out the last sentence of plaintiff's proposed Finding No. III and inserting in its stead the following: 'The plaintiff, George E. W. Luehrmann, is the owner of said unpaid bonds and coupons and has this day delivered said bonds with all interest coupons attached to the Custodian of this court, who shall refund the same, sell the refunding bonds and coupons and apply the proceeds thereof to the payment of the decree, and the remainder of said sum, if not paid or refunded within a period of ninety days, then the Commissioners of said district shall levy a tax against the assessed benefits on the lands and railroads in the district for the satisfaction of said balance due on said judgment.'"

It will be observed that it was the District that insisted that the findings should contain a provision with reference to the refunding of the bonds and the application upon the judgment of the proceeds of the sale thereof, with the reservation that balance of the judgment should be satisfied by the levy of a tax against the assessed benefits on the lands in the District. In requesting conclusions of law, the District prepared and submitted to the court the following:

"1. The plaintiff, George E. W. Luehrmann, is entitled to a decree against the defendant, Lake City, Nettleton and Bay Road Improvement District No. One of Craighead County, Arkansas, in the sum of $13,789.50, with 6% interest thereon from January 16, 1939, and in order to secure the full payment and satisfaction of said judgment, is entitled to foreclosure of the pledge of assessments of benefits levied upon each tract and parcel of land and railroad right-of-way in said District, and to an order requiring the commissioners of said District, and the clerk and collector of Craighead County, and their successors in office to take such steps as may be necessary when ordered by the court to extend, levy and collect such tax against the assessment of benefits as may be necessary to pay the full amount of said judgment with interest thereon and all costs of collection less, however, any credits that may be placed on said judgment by reason of the sale or exchange of said bonds and interest coupons.

"2. It appearing that the bonds and coupons sued on herein are valid and eligible under the provisions of Act 11 of the Second Extraordinary Session of the 49th General Assembly of Arkansas, approved February 12, 1934, for exchange for State of Arkansas Road District Refunding Bonds, the court finds that in order that the taxpayers of the defendant road improvement district may obtain the greatest measure of assistance possible in the liquidation of the aforesaid indebtedness, said

bonds should not be cancelled but should be delivered to the custodian of this court and by him tendered to the State Refunding Board in exchange for the State of Arkansas Road District refunding bonds applicable thereto and that said refunding bonds, when issued, should be placed and remain in possession of said custodian and order from time to time be tendered under the provisions of said Act for purchase and redemption by the State of Arkansas or by the custodian, sold on the open market for the largest amount obtainable and the proceeds of such purchase and redemption or sale should be applied upon and in reduction of the judgment hereinafter entered. The acceptance by the plaintiff of payments upon said judgment made with moneys derived from the purchase and redemption or sale of said State of Arkansas Road District refunding bonds and from the collection of interest thereon and the credit of the same upon said judgment, shall in no way prejudice the rights of the said plaintiff to have said judgment or any unpaid part thereof liquidated by the extension, levy and collection of such taxes as may be necessary therefor against the assessment of benefits in said District.

"3. That the custodian of this court should make application to the First National Bank of St. Louis for the funds now available at said Bank for paying all interest on said Series A bonds and that said funds be applied to the liquidation of the judgment hereinafter rendered."

The conclusion of law No. 2 above quoted requested by the District and the conclusion of law No. II adopted by the court are substantially the same, except for the amount of the judgment. The court's conclusion of law No. II reads: "II. It appearing that the bonds sued on herein are valid and eligible under the provisions of Act No. 11 of the 2nd Extraordinary Session of the 49th General Assembly of Arkansas, approved February 12, 1934, for exchange for State of Arkansas Road District Refunding Bonds, the court finds that in order that the taxpayers of the defendant road improvement district may obtain the greatest measure of assistance possible in the liquidation of the aforesaid indebtedness, said bonds should not be cancelled but should be committed to the custody of a custodian designated by the court and by it tendered to the State Refunding Board in exchange for the State of Arkansas Road District Refunding Bonds applicable thereto, and that said Refunding Bonds when issued should be placed and remain in possession of said custodian and should from time to time be tendered under the provisions of said Act for purchase and redemption by the State of Arkansas, or by the custodian sold on the open market, and the proceeds of such purchase and redemption or sale applied upon and in reduction of the judgment hereinafter entered. The acceptance by the plaintiff of payments upon said judgment made with moneys derived from the purchase and redemption or sale of said State of Arkansas Road District Refunding Bonds and from the collection of interest thereon and the credit of the same upon said judgment shall in no way prejudice the rights of the said plaintiff to have said judgment or any unpaid part thereof liquidated by the extension, levy and collection of such taxes as may be necessary therefor, against the assessment of benefits in said district."

Paragraph VIII of the decree which was entered by the court likewise incorporates the District's requested conclusion of law. This paragraph reads: "It is further ordered, adjudged and decreed that the acceptance by the plaintiff, George E. W. Luehrmann, of payments upon this decree made with moneys derived from the purchase and redemption or sale of said State of Arkansas Road District Refunding Bonds and from the collection of interest thereon and the credit of same upon this decree shall in no way prejudice the right of said plaintiff to have this judgment or any unpaid part thereof liquidated by the extension, levy and collection of such taxes as may be necessary therefor against the assessment of benefits in said district nor shall the same constitute a satisfaction or release of the pledge of benefits given as security for the bonds sued upon herein until this decree, together with accruing interest thereon and the costs of this action, shall have been fully paid."

It would appear that when the trial court expressed his views as to the defenses interposed by the District and suggested a way in which it could be relieved from the full onus of the judgment, the attorneys for the District seized upon the suggestion and adopted it. All parties evidently concluded that, under the circumstances, they should avail themselves of the refunding statute and give the District the benefit thereof, with the reservation, however, that "the acceptance by the plaintiff of pay-

ments upon said judgment made with moneys derived from the purchase and redemption or sale of said State of Arkansas Road District Refunding bonds, and from the collection of interest thereon and the credit of the same upon said judgment shall in no way prejudice the rights of the said plaintiff to have said judgment, or any unpaid part thereof, liquidated by the extension, levy and collection of such taxes as may be necessary therefor against the assessment of benefits in said District."

That the District consented to and adopted the procedure suggested by the court and never intended to predicate any error thereon is substantiated by its failure to except or assign any error to the procedure which we found to be erroneous. Defendants' assignment No. 9, strangely enough, assigns error because the court failed to adopt their requested finding No. IV, and assignments of error Nos. 11 and 12 predicate error upon the court's failure to adopt their requested conclusions of law Nos. 1 and 2. We are presented, therefore, with the anomalous situation of error being urged on account of the court's failure to adopt certain findings of fact and conclusions of law which were, in fact, substantially adopted by the court and which in detail outlined the procedure which defendants now contend to be erroneous. In the original assignments of error, no other exception was taken by the District to the procedure suggested and adopted by the court. After the refunding bonds were sold and the proceeds applied on the judgment, "Supplemental to Assignments to Error" were filed by the District. Error was further predicated in these supplemental assignments on the grounds that the report of the custodian reflected the sale of the refunding bonds at less than quoted price; that the sale was without notice; and that the court made its order without knowledge or appreciation that the custodian had made the sale at a figure "grossly inadequate as compared with the prevailing market price." There is an utter absence of any evidence to sustain any of these assertions. However, the only assignment of error which may even remotely have any reference to the procedure adopted with reference to the sale of refunding bonds and the

application thereof upon the judgment is to be found in supplemental assignment No. 4, which reads: "That the said acts of the said custodian as approved by said order of the court filed herein May 26, 1939, are but the ratification and adoption of the State's refunding plan previously recognized and participated in by plaintiff. That said plaintiff is therefore estopped from further action herein and must be held to have accepted the provisions of the acts and amendatory acts of the State of Arkansas in novation."

But, in view of the entire record, we are constrained to find that this assignment is a mere reiteration of the defenses of novation and estoppel, and any other construction is entirely out of harmony and inconsistent with the prior assignments of error and requested findings. We do not find it necessary to consider plaintiffs' contention that supplemental assignment No. 4 was not properly designated as a part of the record on appeal. It is conceded, however, that the District did not brief nor argue the point upon which the reversal is based.

■■■ While the record is confusing and unsatisfactory, a reconsideration thereof convinces us that we erred in reversing the judgment, and the original opinion must be modified accordingly. We are in accord that the District not only invited the adoption of the procedure directed to obtaining for the District the benefit of the refunding bonds, but never intended to, and did not, predicate any error thereon. It was content to obtain the benefits of the Refunding Act in order to lessen the burden of the landowners, and then endeavor to obtain relief from the deficiency judgment on this appeal solely on the grounds that Luehrmann had lost his remedy by reason of novation, estoppel and laches. It is elementary that no party can complain of an error procured or acquiesced in by him. The decree entered, in so far as the point upon which this court bases its ground for reversal is concerned, was a consent decree. No error can be predicated thereon.

Our order reversing the judgment with directions is vacated and set aside, and the judgment of the lower court must be in all things affirmed. It is so ordered.